

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| R.B., a Minor, by and through her Parent,<br>Plaintiff | CIVIL ACTION |
| v. | |
| MASTERY CHARTER SCHOOL<br>and<br>THE SCHOOL DISTRICT OF<br>PHILADELPHIA,<br>Defendants | 10   6722<br><br>FILED<br>NOV 17 2010<br>MICHAEL E. KUNZ, Clerk<br>By_____ Dep. Clerk |

## COMPLAINT FOR INJUNCTIVE RELIEF

COMES NOW R.B.., Parents of Minor R.B.., by and through their attorney, Ilene Young Law Offices, and hereby files the following seeking injunctive and declaratory relief and in support thereof, avers as follows:

## INTRODUCTION

This is an appeal of a decision of a due process hearing officer. R.B. (hereinafter "Parent.") brings this claim on behalf of her daughter, a minor R.B., a public school student with a disability, Trisomy 21.

R.B. has been identified as and is entitled to special education services under the Individuals with Disabilities Education Act ("IDEA"), and is entitled to full participation in public programming under Section 504 of the Rehabilitation Act. Beginning in March of 2009, R.B. has been excluded the school she attended for many years. The exclusion resulted from the school administration's refusal to allow her program to be implemented on its campus. Parent

1

has been trying to have R.B. allowed back to her school since that date. This due process complaint is the latest attempt.

On October 5, 2010, Parent filed a Complaint for Due Process against both Mastery Charter School, the school R.B. was attending at the time of the exclusion and the School District of Philadelphia. After filing for due process, Parent sought to enforce the IDEA's mandatory stay-put clause which requires that during the pendency of a due process hearing, a student is to remain in their "then current educational placement." 20 U.S.C. § 1415(j). Parent sought a declaration from the Hearing Officer that Mastery Charter School, R.B.'s school at the time the dispute arose, was to be her placement during the pendency of the due process litigation.

On November 1, 2010, the Hearing Officer, upon review of briefs from either party on the issue of pendency, issued an order finding that he was unable to determine the student's pendent placement. Parent seeks to appeal this decision.

## I.   PARTIES

1. R.B. is an exceptional student as defined in the Individuals with Disabilities Education Act ("IDEA"), 30 U.S.C. § 1401 et seq., and as such, is entitled to certain educational services from her local education agency. She is also an individual with a disability as defined in 29 U.S.C. 706, 604 (§ 504) the Rehabilitation Act, and The Americans wth Disabilities Act, 42 U.S.C. § 12102.

2. Parent is the Mother of R.B. and brings this action on her behalf and in her own right as Parent.

3. Defendant, Mastery Charter School (hereinafter "Mastery") is a charter school R.B. was attending at the time she was excluded. It is the school where R.B. is enrolled and

therefore under 22 Pa. Code § 711, it is the Local Education Agency (hereinafter "LEA") responsible for providing R.B. with a Free Appropriate Public Education (hereinafter "FAPE").

4. Defendant, School District of Philadelphia (hereinafter "the District") is and has been at all times R.B.'s public School District of Residence.

## II. JURISDICTION

5. Jurisdiction is based on 28 U.S.C. § 1331 providing for Federal Court jurisdiction over all disputes arising out of interpretation or implementation of federal statutory issues.

6. This Court has jurisdiction under 20 U.S.C. § 1415 in that claims are brought under the Individuals with Disabilities Education Act (IDEA).

7. This Court also has jurisdiction under 29 U.S.C. § 794 in that claims are being brought under § 504 of the Rehabilitation Act, the District having discriminated against a student on the basis of her disability.

## III. STATUTORY ENTITLEMENT

8. The purpose of the IDEA is to ensure that all disabled children have access to a "free appropriate education" (hereinafter "FAPE") "that emphasizes special education and related services that are designed to meet their unique needs and prepare them for further education, employment or independent living." 20 U.S.C. § 1400(d), 34 C.F.R. 300.1(a).

9. All Public school districts in Pennsylvania receive federal education funding under IDEA to provide procedural and substantive rights to students with disabilities who are eligible under the Act.

3

10. Under Pennsylvania Law, Charter Schools situated within public school districts are distinct and separate LEAs. 22 Pa. Code § 711. Therefore, when a child is enrolled in a Charter School, the Charter School is the LEA responsible for providing FAPE to all students with disabilities. 34 C.F.R. 300.209.

11. The mechanism for the delivery of FAPE is the Individualized Education Plan (hereinafter "IEP"). The IEP is a written outline of the educational program to be delivered to a student based on his or her unique needs. 20 U.S.C. § 1414(d).

12. Any Parent who disagrees with the provision of FAPE may seek an due process hearing whereby an impartial Hearing Officer is assigned to determine whether the Local Education Agency (hereinafter "LEA") has provided FAPE to the child in accordance with the IDEA. 20 U.S.C. § 1415, 34 C.F.R. 300.311, 300.513.

13. In recognition of the great importance of the child's ongoing special education during an ongoing administrative proceeding, the IDEA specifies that "during the pendency of any proceeding . . . the child shall remain in the current educational placement." 20 U.S.C. § 1415(j), 34 C.F.R. 300.514. This provision of the IDEA is referred to as the "stay-put" provision.

14. The Congressional intent behind the stay-put provision is to ensure that "all handicapped children, regardless of whether their case is meritorious or not, are to remain in their current educational placement until the dispute with regard to their placement is ultimately resolved." Drinker v. Colonial School Dist., 78 F.3d 859, 864 (3d Cir. 1996).

15. Though the IDEA does not define "current educational placement," the Third Circuit has held that this is the "operative placement actually functioning at the time the dispute

arises." Drinker, 78 F.3d at 865. In most cases, this is where the last agreed to IEP was implemented. Drinker, 78 F.3d at 867.

16. The question of what constitutes the child's "current educational placement" is one of law not of fact. Drinker, 78 F.3d. at 865.

17. The stay-put provision "operates as an automatic injunction and prevents the schools from unilaterally altering a student's educational placement and thereby excluding disabled students from school." George A. v. Wallingford Swarthmore Sch. Dist., 655 F. Supp. 2d 546 (E.D. Pa. 2009).

## IV. FACTUAL BACKGROUND

18. R.B.'s school, formerly known as the Pickett School and now called Mastery Charter School, has been her only school of attendance for many years.

19. Through contract with the School District of Philadelphia (hereinafter "the District"), Mastery Charter School (hereinafter "Mastery") took over management of the Pickett School in 2007, assuming LEA responsibility for R.B.'s special education program.

20. At the time Mastery Charter School assumed management of the Pickett School, neighborhood students already attending Pickett became students of Mastery.

21. From the time Mastery assumed its role as the LEA, R.B.'s special education program, then in place, continued as it had in the past.

22. R.B.'s special education program is designed for implementation at the Pickett School/Mastery school building. This ongoing program had not been altered, modified, or eliminated through the IEP process.

23. A critical component of the program is for Parent to bear the responsibility for providing a private full-time aide for R.B., a role which has always been served, in part, by Parent herself, due to staffing and cost considerations.

24. Parent has always been an active advocate on behalf of R.B.'s education.

25. Due to personal conflict with Parent and in retaliation for her advocacy on her daughter's behalf, on March 2009, Mastery's administration unilaterally barred Parent from school. It offered no alternative for implementation of R.B.'s program.

26. R.B. has been left without placement since that date.

27. Parent challenged Mastery's actions and the denial of R.B.'s right to education by filing a pro se complaint in the Eastern District of Pennsylvania in April 2009.

28. The Complaint was dismissed for procedural deficiencies before reaching a decision on the merits.

29. Parent continued to dispute Mastery's actions and filed another complaint in the Pennsylvania Court of Common Pleas in June 2010.

30. This Complaint was also dismissed for procedural deficiencies before reaching a decision on the merits.

31. Despite Parent's numerous attempts to return R.B. to school with her special education program in place, Mastery referred R.B. and her Parent for truancy proceedings.

32. In September 2010, Parent retained present counsel and filed a complaint for due process. The complaint named Mastery and the School District of Philadelphia as defendants. Parent claimed that Mastery was the responsible LEA for all purposes, including stay put rights during the pendency of the administrative proceedings, and reuested an order directing Mastery to allow R.B.'s attendance.

33. On October 14 and October 18, 2010, respectively, Mastery and the School District of Philadelphia each filed a Motion to Dismiss Parent's due process complaint.

34. The Hearing Officer requested that Parent respond to the Motions to Dismiss and that the parties brief the issue of pendency. Parent and the School District of Philadelphia argued that Mastery was the LEA for stay put purposes.

35. On November 1, 2010, the Hearing Officer issued an order denying the Motions to Dismiss declining to determine pendency for purposes of current stay put (Exhibit 1).

36. The first due process hearing date is scheduled for December 1, 2010. No further hearing dates have been assigned.

37. R.B. remains out of school without a pendent placement during the ongoing administrative proceedings.

## V. COUNT I – IDEA - FAPE

38. Plaintiff incorporates paragraphs 1 through 38 by reference as though set forth in full herein.

39. The Hearing Officer committed errors of law and reached erroneous conclusions of fact unsupported by substantial evidence as identified herein:

    a. The Hearing Officer reached an erroneous conclusion of law when he determined that R.B.'s pendent placement was a mixed question of law and fact and could not be determined pending the outcome of the hearing.

    b. The Hearing Officer reached an erroneous conclusion of law when he determined that R.B. could not be returned to Mastery over Mastery's objection.

7

WHEREFORE, Plaintiff respectfully requests that this Court enter an order declaring Mastery Charter School the "stay-put" educational placement until the conclusion of due process hearings.

Dated: November  /7, 2010

Respectfully Submitted

Ilene Young, Esquire
Attorney for Plaintiffs
PA ID#35704
50 East Court Street
Doylestown PA 18901
Ph: (215) 348-5448
Fax: (215) 689-4868

## CERTIFICATE OF SERVICE

I, Ilene Young, Esquire, hereby Certify that on this 17 day of November a true and correct copy of Petitioner's Motion for Mandatory IDEA Stay-Put Injunction and Exhibits were served on the following by US Mail and Electronic Mail:

Glenna Hazeltine
King Spry Herman Freund & Faul
One Broad Street, Suite 700
Bethlehem PA 18018

Jennifer Nestle, Esquire
Office of General Counsel
The School District of Philadelphia
440 N. Broad Street, Suite 313
Philadelphia PA 19130

Dated: November 17, 2010

Ilene Young, Esquire
Attorney for Plaintiffs
PA ID#35704
50 East Court Street
Doylestown PA 18901
Ph: (215) 348-5448
Fax: (215) 689-4868

Exhibit 1

IN THE OFFICE FOR DISPUTE RESOLUITON

| | |
|---|---|
| R.B., a Student | : |
| v. | : |
| The School District of Philadelphia | : ODR No. 01632/10-11 JS |
| and | : and |
| Mastery Charter Schools | : ODR No. 01633/10-11 JS |

## ORDER REGARDING PENDENCY, THE DISTIRCT'S MOTION TO DISMISS, AND MASTERY'S MOTION TO DISMISS

### INTRODUCTION

Three pre-hearing issues are currently ripe. First, R.B. (Student) and Rozelia B. (Parent) claim that the Mastery Charter School, Prickett Campus (Mastery) is the Student's pendent placement during this proceeding, and Mastery objects.[1] Second, Mastery has moved to dismiss these proceedings. Third, the School District of Philadelphia (District) has moved to dismiss these proceedings. For reasons set forth below, the Student cannot be ordered back into Mastery at this procedural point in the hearing; Mastery's motion to dismiss is denied; and the District's motion to dismiss is denied.

### PENDENCY

All parties to this matter agree that the Student should be in school, but she is not. During a conference call on October 20, 2010, this Hearing Officer voiced his incredulity and displeasure about the Student's lack of programming, especially given the consensus that the Student should be receiving an education. Pendency is usually a straightforward issue that rarely requires the intervention of a hearing officer. The IDEA requires students to remain in their "then-current educational placement" while the hearing is pending, unless the parties (or the parents and the SEA) make an agreement to the contrary. See 20 U.S.C. § 1415(j). This provision is sometimes referred to as the "stay put" rule, because it prevents school districts from altering a student's educational placement after a hearing is requested.

The parties were instructed to work together to come to a pendency agreement for the Student but, if an agreement could not be reached before October 29, 2010, this Hearing Officer would determine the Student's pendent placement. No agreement was reached and all parties submitted briefs on the issue. Upon careful consideration of the briefs, it is now clear the specific and highly unusual circumstances of this case have turned what should be a simple matter into something quite complex.

The Parent argues that the stay put rule requires the local educational agency (LEA) to maintain "the operative placement actually functioning at the time the dispute first arises." *L.Y. v. Bayonne Bd. of Educ., Case No. 09-3741* (3d Cir. Jun. 10, 2010). This Hearing Officer agrees. However, there was no operative placement actually functioning at the time this dispute first arose. The time that the dispute arises is determined by the filing date of the Parent's Complaint, October 5, 2010.[2] The Student was out

---
[1] References to the Student's name and gender are not used to protect the Student's privacy.
[2] The Parent contends that the dispute arose when she attempted, *pro se*, to pursue claims against Mastery in court, but it

of placement for over a year and a half when the Complaint was filed. In addition, there is a dispute as to which educational entity is the Student's LEA. As described below, it is not possible to determine which entity is responsible for the Student's programming without making findings of fact.

All parties agree that the Student's last-approved individual educational plan (IEP) should be implemented during the pendency of these proceedings. The disagreement is about where the IEP should be implemented. Mastery contends that it was the Student's LEA until it dis-enrolled the Student on or about June 19, 2009. At that point, Mastery claims that the District became the Student's LEA and, therefore, is responsible for educating the Student. Mastery also claims that any order placing the Student at Mastery during the pendency of these proceedings would bypass Mastery's admissions process by effectively re-enrolling the Student at Mastery. Such an order, Mastery says, exceeds the jurisdictional authority of the Office for Dispute Resolution.

The pleadings and motions submitted in this case reveal a significant dispute about the Student's dis-enrollment. Mastery claims that it was not only entitled to dis-enroll the Student, but was obliged to do so pursuant to 24 P.S. § 11.24 (requiring students to be removed from the school's active roster after ten consecutive, unlawful absences). The Parent contends that both exceptions to 24 P.S. § 11.24 are met in this case because 1) the Student's absences were lawful and 2) compulsory attendance prosecution was pursued. More specifically, regarding the lawfulness of the Student's absences, the Parent claims that she was barred from Mastery's campus, effectively making it impossible for the Student to attend, which excuses the Student's absences. Mastery claims it did nothing more than implement its visitors policy, applicable to all parents. Regarding compulsory attendance prosecution, Mastery states in its pleadings that it reported the Student's absences to the District and the Department of Public Welfare, but does not say that it or the District actually pursued a prosecution.[3] Consequently, the legitimacy of the Student's dis-enrollment is a mixed question of fact and law that cannot be resolved before the hearing.

The evidence and testimony may show that the Student's dis-enrollment was proper, or that the dis-enrollment was part and parcel to a violation of the Student's rights.[4] Either way, the fact remains that the issue cannot be decided until evidence and testimony is actually presented. As the Parent bears the burden of persuasion in this matter[5], the Student cannot be returned to Mastery over Mastery's objection while this matter is pending and the facts are in dispute. This decision is explicitly limited to the particular circumstances of this case. Even a slight variance in the circumstances could easily yield a different outcome.

Despite the foregoing conclusion, it is vexing that the Student remains out of school despite the fact that all parties agree that the Student is entitled to be in school. For its part, the District disagrees with Mastery's assertion that it (the District) became the Student's LEA immediately upon dis-enrollment from Mastery.[6] However, the District agrees that it will be the Student's LEA if the Parent enrolls the Student in the District. Moreover, the District agrees that it must implement the last-approved IEP until a new IEP can be properly created – if the Student enrolls. This is clearly the path of least resistance in

---

is the initiation of a special education due process hearing pursuant to 20 U.S.C. § 1415 that triggers the stay put rule. To this hearing officer's knowledge, this is the first time the Parent or the Student has requested a hearing against Mastery.
3   DPW and the District work together as per the District's truancy plan. *See M.H. v. Mathematics, Civics, and Sciences Charter School*, ODR No. 00252/09-10 (Valentini, Dec. 2, 2009).
4   If the Student was unlawfully excluded from Mastery in violation of the IDEA and Chapter 711, and that unlawful exclusion forms the basis of the Student's dis-enrollment, this Hearing Officer will have no hesitation to order the Student back to Mastery at the conclusion of these proceedings.
5   *See Schaffer v. Weast*, 546 U.S. 49; 126 S. Ct. 528; 163 L. Ed. 2d 387 (2005)
6   The Parent also claims that Mastery, not the District, is the Student's LEA.

terms of getting the Student into school while this matter is pending. This Hearing Officer will not, and arguably could not, order the Parent to enroll in the District, but feels compelled to highlight this pragmatic option.

## MASTERY'S MOTION TO DISMISS

Pursuant to 22 Pa Code § 711, Mastery was the Student's LEA at least until the Student dis-enrollment. According to Mastery, this happened on or about June 19, 2009. In the Complaint, the Parent seeks compensatory education for the entirety of the time that the Student was denied a free appropriate public education (FAPE). The Parent alleges that this denial began when she was barred from Mastery on March 6, 2009. Therefore, the Parent seeks a remedy from Mastery for a period of time that Mastery was the Student's LEA. Consequently, Mastery's motion to dismiss is denied.

## THE DISTRICT'S MOTION TO DISMISS

The District claims that it is not a proper defendant because it was not the Student's LEA during the period of time in question. That period runs from March 6, 2009 through the present (ongoing). Mastery claims that the District became the Student's LEA on or about June 19, 2009. The Parent relies upon both federal and Pennsylvania court rules that would allow the joining of the District as a defendant.

The Complaint describes the Parent's unsuccessful efforts to determine whether the District or Mastery is the Student's LEA, and so the Complaint raises claims against the Student's LEA – whichever agency that may be. The Parent should not be prejudiced by the disagreement between Mastery and the District as to which entity is the Student's LEA. Additionally, although the rules cited by the Parent are not directly applicable in this hearing, there is no rule that would prohibit the Parent from asserting alternative claims in a due process hearing against multiple agencies, which is what the Parent did. For all of these reasons, the District's motion to dismiss is denied.

## ORDER

**Wherefore**, Mastery's Motion to Dismiss is hereby **DENIED**; the District's Motion to Dismiss is hereby **DENIED**; and the Student shall not be returned to Mastery during the pendency of these proceedings. This Order shall not preclude the Parent from entering an agreement with either Mastery or the District, or both, concerning the Student's pendent program. This Order shall not prevent the Parent from enrolling the Student in the District. In the event that the Parent so enrolls the Student, the District shall implement the Student's last-approved IEP during the pendency of these proceedings.

Dated: November 1, 2010      Signed: /s/ Brian Jason Ford
                                                    BRIAN JASON FORD
                                                    Hearing Officer
                                                    Office for Dispute Resolution

**JS 44** (Rev. 12/07)  **CIVIL COVER SHEET**  10-cv-6722

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**10 6722**

### I. (a) PLAINTIFFS
R.B, a minor, by and through Parent

**DEFENDANTS**
Mastery Charter Schools
The School District of Philadelphia

(b) County of Residence of First Listed Plaintiff: **Philadelphia**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: **Philadelphia**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Ilene Young Law Offices, 50 East Court Street
Doylestown PA 18901  (215) 348-5448

Attorneys (If Known)
Jennifer Nestle, Glenna Hazeltine

### II. BASIS OF JURISDICTION
[X] 3 Federal Question (U.S. Government Not a Party)

### III. CITIZENSHIP OF PRINCIPAL PARTIES
(For Diversity Cases Only)

### IV. NATURE OF SUIT
[X] 446 Amer. w/Disabilities - Other

### V. ORIGIN
[X] 1 Original Proceeding

### VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing: **20 USC § 1415**
Brief description of cause: **Preliminary Injunction**

### VII. REQUESTED IN COMPLAINT:
JURY DEMAND: [ ] Yes [ ] No

DATE: **11-17-10**
SIGNATURE OF ATTORNEY OF RECORD: /s/ Ilene Young

DOCKET NUMBER: **NOV 17 2010**

**UNITED STATES DISTRICT COURT**

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 5539 Pulaski Ave, Philadelphia PA 19144

Address of Defendant: (1) 5700 Wayne Ave, Philadelphia PA, 19144  (2) 440 N. Broad Street, Philadelphia PA 19103

Place of Accident, Incident or Transaction: Mastery Charter School, Philadelphia PA
(Use Reverse Side For Additional Space)

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))  Yes ☐ No ☐

Does this case involve multidistrict litigation possibilities?  Yes ☐ No ☐

RELATED CASE, IF ANY:
Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐ No ☐

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐ No ☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?  Yes ☐ No ☐

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐ No ☐

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☑ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify)

B. *Diversity Jurisdiction Cases:*
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
    (Please specify)

**ARBITRATION CERTIFICATION**
(Check Appropriate Category)

I, _____, counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: 11-17-10    _____ Attorney-at-Law    35704 Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

NOV 17 2010

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 11-17-10    _____ Attorney-at-Law    35704 Attorney I.D.#

CIV. 609 (6/08)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

RB, by and through Parent : CIVIL ACTION
v. :
Mastery Charter School, et al : NO. 10 6722

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. (X)

| 11/17/10 | Ilene Young | Plaintiff |
|---|---|---|
| Date | Attorney-at-law | Attorney for |

| (215) 348-5448 | (215) 689-4868 | Ileneyoung@ileneyoung.com |
|---|---|---|
| Telephone | FAX Number | E-Mail Address |

(Civ. 660) 10/02

NOV 17 2010