# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| R.B., *a Minor, by and through her Parent*, Plaintiff, <br><br> v. <br><br> MASTERY CHARTER SCHOOL, *and* Defendants. | CIVIL ACTION <br><br> NO. 2:10-cv-06722 |

## MEMORANDUM OPINION AND ORDER

**RUFE, J.**                                                             **JANUARY 11, 2011**

This matter comes before the Court upon Defendant Mastery Charter School's Motion for Stay of Order Pending Appeal of this Court's December 29, 2010 Memorandum Opinion and Order to the Third Circuit.[1]

### I. BACKGROUND

The facts of this case were discussed in detail in this Court's December 29, 2010 Opinion and need not be repeated here.

On December 29, 2010, this Court issued an Opinion and Order granting R.B.'s Motion for an IDEA Stay-Put Injunction, based on its finding that Mastery Charter School, Pickett Campus ("Mastery"), changed R.B.'s educational placement by unilaterally disenrolling her on June 19, 2009.[2] For the reasons set forth in that opinion, this Court ordered the immediate reinstatement of

---

[1] Doc. no. 36.

[2] Doc. no. 28.

R.B. at Mastery.[3] On December 30, 2010, Mastery appealed that judgment to the Third Circuit,[4] and now seeks a stay of the judgment order pending the Third Circuit's disposition of its appeal.[5] After careful consideration of the Defendant's Motion, Plaintiff's Opposition thereto, and for the reasons set forth below, Defendant's motion is denied.

## II. DISCUSSION

Federal Rule of Civil Procedure 62(c) provides that "[w]hile an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on . . . terms that secure the opposing party's rights." This type of injunctive relief is considered an "extraordinary remedy" which courts should only grant in "limited circumstances."[6] It is well settled that a party seeking the stay must show: (1) it will likely prevail on the merits of the appeal, (2) it will suffer irreparable injury if the stay is denied, (3) other parties will not be substantially harmed by the stay, and (4) the public interest will be served by granting the stay.[7] Although at least one court has held that this analysis is not

---

[3] Doc. no. 29.

[4] Doc. no. 34.

[5] In a January 5, 2011 teleconference with counsel for both Parties, Mastery reported that R.B. has been re-enrolled because a space opened in the school, and R.B. was next on the wait list. The Court, however, does not believe that this moots the Defendant's Motion to Stay—R.B. is entitled to all the protections of the Stay Put Order, regardless of whether Mastery has re-enrolled her willingly or pursuant to this Court's Order.

[6] Frank's GMC Truck Ctr., v. Gen'l Motors Corp., 847 F.2d 100, 102 (3d Cir. 1988).

[7] See Hilton v. Braunskill, 481 U.S. 770 776 (1987); S & R Corp. v. Jiffy Lube Int'l., Inc., 968 F.2d 371, 374 (3d Cir. 1992).

2

required if the stay-put provision applies,[8] in the interest of conducting a comprehensive review, the Court will consider each factor in turn.

**A.    ANALYSIS**

    1.    **LIKELIHOOD OF SUCCESS ON THE MERITS OF THE APPEAL**

Here, Defendants contend that they have a strong likelihood of success on the merits by reiterating legal arguments this Court has already considered—and rejected—in its December 29, 2010 opinion. Namely, Mastery argues that it did not unilaterally change R.B.'s educational placement because its actions complied with state law, and a change in school is not a *per se* change in educational placement. These are the issues are at the heart of this Court's ruling, which rejected Mastery's arguments as unpersuasive. Although Mastery has enunciated a legitimate appellate issue, and may ultimately prevail, a "colorable issue . . . is not what is required for a stay pending appeal."[9] Instead, the party arguing for a stay must demonstrate a "substantial likelihood of success."[10] Mastery's memorandum in support of its motion points this court to no intervening case law—or to any case law, for that matter, that alters this Court's view of the legal questions in this case.[11]

---

    [8] Ringwood Bd. of Educ. v. K.H.J., ex rel. K.F.J., 469 F.Supp.2d 267, 271 (D.N.J. 2006).

    [9] Ace Am. Ins. Co. v. Wachovia Ins. Agency, Inc., No. 08-4369, 2008 WL 4951239, at * 5 (D.N.J. 2008).

    [10] Republic of Phillipines v. Westinghouse Elc. Corp., 949 F.2d 653, 658 (3d Cir. 2008).

    [11] On the other hand, Plaintiff's Opposition identifies a recent decision by a Hearing Officer in the Office of Dispute Resolution which bolsters this Court's December 29th opinion. See Pl. Opp'n at 11, citing L.H. v. Cumberland Valley Sch. Dist., Pennsylvania Special Educ. Op. No. 01481-1011 & 01589 consolidated (December 25, 2010). According to Plaintiff, in L.H., a hearing officer held that a student no longer had the right to FAPE from his public school district of residence after enrollment at a

3

2. **IRREPARABLE INJURY TO MASTERY**

Mastery argues that it will be irreparably injured if this stay is denied because "significant harm is imposed by requiring Mastery Charter School to hold open spaces for a student being withheld because of IEP disputes," and because re-enrolling R.B. will force Mastery to violate the age range restrictions set forth under Pennsylvania law pursuant to 22 Pa. Code § 14.146. Neither argument is persuasive. As to the former, Mastery does not explain why or how "hold[ing] open spaces for students being withheld because of IEP disputes" will cause irreparable harm. It neither explains the number of students currently being withheld because of such disputes, nor does it offer any evidence of any type of financial or programmatic harm.

The latter argument is similarly deficient. Under both federal and state law, Mastery is required to deliver a free and appropriate public education ("FAPE") to its special education students until graduation or age twenty-one. A charter school's responsibility to children with disabilities is codified in 24 Pa. Code §§ 711, *et seq.* Section 711.3 mandates that "[c]harter schools . . . assume the duty to ensure that a FAPE is available to a child with a disability in compliance with IDEA and its implementing regulations," and incorporates by reference 34 CFR §300.101, which requires a FAPE be "available to all children . . . between the age of 3 and 21, inclusive, including children with disabilities who have been suspended or expelled from school," and 34 C.F.R. § 300.102, which excuses a state's obligation to provide FAPE to students aged eighteen to twenty-one to the extent that "its application to those children would be inconsistent with State law or practice," *unless* a student between those ages has previously been identified as a

---

local charter school.

child with a disability.[12] Since R.B. has already been identified as a student with a disability, Mastery's claim that "R.B.'s forced entry into the school would require the school to violate the age-range restrictions set forth in the School Code" falls short of consideration. Mastery appears to realize the weakness in its argument, as it omitted relevant and critical exceptions to the Pennsylvania statute it relies on.[13] Although 22 Pa. Code § 14.146, states that "[a] student with disability may not be placed in a class in which the chronological age from the youngest to the oldest student exceeds these limits," as Mastery noted, the statute concludes that age limits do not apply if " an exception is determined to be appropriate by the IEP team of that student and is justified in the IEP."

3. **INJURY TO PLAINTIFFS FROM A STAY**

In its Motion, Mastery argues that R.B. will be harmed if the stay is granted. Mastery claims that the "programming as [sic] Mastery Pickett has significantly changed," and consequently, is no longer is the "best possible environment for R.B,"[14] and that Germantown High School will provide a more suitable environment to R.B. In response, Plaintiff persuasively argues that simply identifying an alternative—and potentially superior—placement does not show irreparable harm to either the LEA or the student.[15]

Mastery's argument is not compelling; Mastery's only duty to R.B. under the I.D.E.A., is

---

[12] (emphasis added).

[13] Def. Mot. at 14.

[14] For instance, Mastery notes that Mastery Pickett has nearly doubled in size since R.B. last attended, school routines have been altered, the physical layout of the school has altered, and the student teacher ratio has increased from 10:1 to 12:1 or 18:1. Def. Mot. at 12.

[15] Pl.'s Opp'n to Def.'s Mot. at 9.

5

to provide an "appropriate education,"[16] and it has not argued that is unable to do so. "An appropriate education does not mean the absolute best or 'potential maximizing' education available."[17]

As this Court has stressed, the language of §1415(j) is unequivocal, and mandates that "the child *shall* remain in the then-current educational placement."[18] Therefore, "all handicapped children, regardless of whether their case is meritorious or not, are to remain in their current educational placement until the dispute with regard to their placement is ultimately resolved."[19] Whether or not that educational placement is an imperfect fit is irrelevant to the inquiry; the only tasks before the court on a §1415(j) stay-put motion are to identify if a change in educational placement occurred, and if so, to then determine the child's then-current educational placement. Neither case law nor the statute require any assessment of whether the child's then-current educational placement is the optimal program to meet the student's educational needs. The sole purpose of § 1415(j) is to protect the child during the pendency of proceedings.

The Court finds, however, that any harm that may result from re-enrollment at Mastery is vastly outweighed by the risk that R.B. will remain out of school for even one day more. As Mastery itself observes, in R.B.'s two-year-long absence, her speech, reading, and math levels have likely regressed.[20] It is difficult for this Court to understand how R.B.'s continued exclusion from

---

[16] Id.

[17] Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Co. v. Rowley, 458 U.S. 176, 197 n. 21 (1982).

[18] 20 U.S.C.A § 1415(j); 22 Pa. Code § 16.63(a).

[19] Drinker by Drinker v. Colonial Sch. Dist., 78 F.3d 859, 864–65 (3d Cir. 1996).

[20] Def.'s Mot. at 13.

Mastery will arrest the regression in R.B.'s academic and functional skills.  Delay in implementing this Court's order will only result in further injury to R.B.  Mastery has failed to show that the less-then-optimal environment it will provide R.B. will be more damaging then R.B.'s current exclusion from her educational placement.[21]

    4.    **PUBLIC INTEREST**

Finally, Mastery nonsensically argues that because the public interest "categorically favors school attendance," this Court should grant a motion which would continue to exclude R.B. from attending Mastery.  Mastery seems to assert that granting the stay will force parent to enroll R.B. in Germantown High School, her suggested placement if she re-enters the Philadelphia School District.  This argument is plainly illogical.  The Court agrees with Mastery that "[i]t is of utmost importance that R.B. receives educational programming," but finds that the best—and only—way to achieve that goal is to deny Mastery's motion for stay of order pending appeal.  This Court's December 29, 2010 order represents a judicial recognition that R.B. has a statutorily vested right to remain in her *current*-educational placement during the pendency of proceedings—regardless of whether her LEA is a charter school or a public school.  At base, Mastery argues that the "public interest" is served when a Parent is forced to abandoned their child's statutorily mandated educational rights.  For obvious reasons, this Court rejects that argument.

## III. CONCLUSION

Having carefully considered all the contentions of Mastery, Plaintiff's Opposition, and for

---

[21] If Mastery does not believe it can implement R.B.'s educational program appropriately, it is welcome to, and indeed, *must*, arrange for—and fund—a suitable alternative (if R.B.'s parent agrees), during the pendency of these proceedings.

the foregoing reasons, Mastery's Motion for Stay of Order Pending Appeal is hereby DENIED. The Court notes that the fact that the underlying judgment is on appeal does not deprive this Court of its normal contempt powers, and advises the Parties that the Court will respond swiftly to any violation of the underlying Order.[22] "The federal rules contemplate that, absent a stay, a victorious plaintiff may execute on the judgment even while an appeal of that judgment is pending."[23]

---

[22] See, e.g., Acevedo-Garcia v. Vera-Monorig, 368 F.3d 49, 58 (1st Cir. 2004) (noting that "it is well-settled that a party is not free to violate a court order simply because it believes (correctly or not) that the order is invalid").

[23] Id.